1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

12

ENRIQUETA VEGA DE CENDEJAS,

13
            Plaintiff,

14
        v.

15
COMMISSIONER OF SOCIAL
SECURITY,

16

17
            Defendant.

18

Case No. 1:20-cv-01181-EPG

FINAL JUDGMENT AND ORDER
REGARDING PLAINTIFF'S SOCIAL
SECURITY COMPLAINT

(ECF Nos. 1, 23).

19          This matter is before the Court on Plaintiff's complaint for judicial review of an

20  unfavorable decision by the Commissioner of the Social Security Administration regarding her

21  application for disability insurance benefits. The parties have consented to entry of final judgment

22  by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal

23  to the Court of Appeals for the Ninth Circuit. (ECF No. 12).

24          Plaintiff argues in her motion for summary judgment that (1) the Administrative Law

25  Judge (ALJ) committed harmful error failing to defer to and afford "greatest weight" to the well-

26  supported treating physician medical source statement (MSS) from Dr. Joanne Spalding, absent

27  the requisite "specific and legitimate" reasons; (2) the ALJ's determination that Bladder

28  Dysfunction was not a "severe" impairment at Step Two is not supported by the substantial

evidence as a whole; and (3) the ALJ committed harmful error by failing to provide the requisite "clear and convincing" reasons for rejecting symptomology evidence regarding the severity of Plaintiff's medically determinable impairment (MDI) of "bladder insufficiency," rendering the ALJ's decision not supported by substantial evidence. (ECF No. 23, p. 2). Plaintiff argues that, should the Court grant her motion for summary judgment, this court should remand for payment of benefits, or, alternatively, remand for further administrative proceedings. (*Id.* at 16-17).

Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

# I. ANALYSIS

## A. Dr. Spalding's Opinion

Plaintiff argues that the ALJ committed harmful error by failing to give specific and legitimate reasons for discounting the opinion of Plaintiff's treating physician, Dr. Spalding, who offered an opinion on Plaintiff's work limitations in an August 29, 2017 MSS. (ECF No. 23, p. 3). Pertinent here, Dr. Spalding opined that Plaintiff's urinary issues would interfere with her ability to perform even simple work tasks, *i.e.*, be "off task," twenty-five percent or more during a typical workday and would have to "use [the] bathroom each hour or more frequently." (A.R. 527, 528). Plaintiff argues that the ALJ did not consider the whole record in discounting Dr. Spalding's opinion, which supports the assessed limitations.

The Ninth Circuit has held the following regarding such opinion testimony:

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. *Id.* § 404.1527(c)(2)–(6).

> "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (alteration in original) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Bayliss*, 427 F.3d

1

at 1216); *see also Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[The]
reasons for rejecting a treating doctor's credible opinion on disability are
comparable to those required for rejecting a treating doctor's medical opinion.").
"The ALJ can meet this burden by setting out a detailed and thorough summary of
the facts and conflicting clinical evidence, stating his interpretation thereof, and
making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)
(quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

2

3

4

*Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).[1]

5

6       The ALJ assigned limited weight to Dr. Spalding's opinion, providing the following

7    reasoning:

8

Regarding opinion evidence, on August 29, 2017, a medical source statement from
Dr. Joanne Spalding[2] for assessment of claimant's urinary incontinence,
depression and diabetes revealed that she did not have the ability to hold her urine
and would need easy access to a bathroom. Her urinary incontinence would allow
her to walk approximately 10 minutes, sit no more than 2 hours and no standing.
She would require hourly breaks and anticipated to be off task 25% of the work
day (Exhibit 11F). Limited weight is accorded this opinion, as Dr. Spalding's
progress notes do not discuss consistent reporting or testing as to urinary
frequency. The claimant's treating source for this condition noted significant
improvement (Exhibit 23F).

9

10

11

12

13

14    (A.R. 34).

15       The first reason identified to support the ALJ's assignment of limited weight to Dr.

16    Spalding's opinion is that "Dr. Spalding's progress notes do not discuss consistent reporting or

17    testing as to urinary frequency." (A.R. 34). While "an ALJ may discredit treating physicians'

18    opinions that are conclusory, brief, and unsupported by the record as a whole [] or by objective

19    medical findings," here, the record as a whole shows that Plaintiff had consistent urinary issues.

20    *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (internal citations

21    omitted).

22       Importantly, Dr. Spalding's MSS reflects that Plaintiff's urinary problems first manifested

23    sometime after Plaintiff's hysterectomy in December 2016, which is about eight months before

24    the MSS was prepared in August 2017. In an April 11, 2017 treatment record, Dr. Spalding noted

25

26    [1] Because Plaintiff filed her application before March 27, 2017, 20 C.F.R. § 404.1527 applies in
considering the weight given to her treating physicians' opinions. For applications filed on or after March
27    27, 2017, 20 C.F.R. § 404.1520c applies in considering medical opinions; notably, no deference or specific
evidentiary weight is given to medical opinions.
28    [2] Quotations to the ALJ's opinion have been revised to reflect the correct spelling of Dr. Spalding's name.

1   that Plaintiff was experiencing urinary incontinence following the hysterectomy. (A.R. 500). Dr.

2   Spalding referred Plaintiff to Dr. McCauley, a gynecologist, for follow up evaluation. (A.R. 501).

3   Dr. McCauley wrote a letter to Dr. Spalding on August 8, 2017, stating that "a urodynamic study .

4   . . confirmed the presence of mixed incontinence of urine with significant reduction in her bladder

5   capacity" and stated that he would begin treatment for this issue. (A.R. 749).

6       Accordingly, based on when Dr. Spalding issued her MSS on August 29, 2017, the ALJ

7   was correct in observing that, at least at that time, there had not been consistent reporting or

8   testing as to urinary frequency. However, given the relatively short time period between when the

9   urinary symptoms manifested and the MSS, one would not expect there to be frequent reports or

10   testing regarding urinary frequency. Moreover, a proper evaluation of a treating physician's

11   opinion considers "the record as a whole." *Batson*, 359 F.3d at 1195.

12       Notably, after the MSS, Plaintiff followed up with Dr. Spalding on December 11, 2017,

13   with the medical record indicating that Plaintiff still had trouble with incontinence following her

14   surgery. (A.R. 720-21). Further, another May 8, 2018 follow up visit with Dr. Spalding reveals

15   that Plaintiff still had problems with urinary frequency and incontinence, with Dr. Spalding

16   noting that Plaintiff "used to work[] in fields but hasn't been able to return to work due to this

17   medical problem including incontinence, lack of access to toilets as much as she needs it, and the

18   smell the incontinence has caused her." (A.R. 702). Additionally, a May 23, 2018 record from Dr.

19   Roderick Harris noted that Plaintiff had "incontinence with urgency and severe urinary

20   frequency." (A.R. 576). A follow up with Dr. Spalding on May 29, 2018, again noted that

21   Plaintiff had problems with "[u]rinary frequency [and] [u]rinary incontinence." And a July 11,

22   2018 follow up with Dr. Roderick recorded Plaintiff as having problems with "[u]rgency and

23   incontinence." (A.R. 574). Thus, in light of the record as a whole, the ALJ erred in assigning

24   limited weight to Dr. Spalding's opinion based on the lack of supporting evidence.

25       The second reason identified to support the ALJ's assignment of limited weight to Dr.

26   Spalding's opinion is that "[t]he claimant's treating source for this condition noted significant

27   improvement." (A.R. 34). This appears to a reference to an October 9, 2017 letter from Dr.

28   McCauley to Dr. Spalding, which states as follows:

> [Plaintiff] is currently on Oxybutylene 5 mg. per day. She has significant improvement in her bladder instability. However, she states that she does have a history for glaucoma. She is currently asymptomatic; however, I have asked her to consult with her ophthalmologist in Merced if it is safe for her to continue on her Oxybutylene. If she needs to discontinue her Oxybutylene, a midurethral sling may be required.

(A.R. 748). Again, the ALJ's discounting of Dr. Spalding's opinion is unsupported by the record as a whole.[3] Notably, the May 23, 2018 record from Dr. Harris cited above notes that Plaintiff had to discontinue "oxybutynin 5 mg" because it gave her blurry vision, while also noting that Plaintiff urinated about four times per hour and suffered from incontinence.[4] (A.R. 576). Moreover, the other record evidence cited demonstrates that any "significant improvement" Plaintiff had was short-lived.

For the above reasons, the Court concludes that the ALJ failed to give specific and legitimate reasons, supported by substantial evidence, to assign Dr. Spalding's opinion limited weight.

### B.    Step Two Determination

Plaintiff next argues that the ALJ erred by failing to find that Plaintiff's bladder instability was a severe impairment at Step Two. (ECF No. 23, p. 13).

If a claimant has a medically determinable impairment ("MDI"), the ALJ must determine "whether [the] impairment(s) is severe," which is referred to as Step Two. 20 C.F.R. § 404.1521. A "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The "ability to do basic work activities," in turn, is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1522(b). "An impairment is not severe if it is

---

[3] The Court recognizes Defendant's assertion that other medical records support Dr. McCauley's finding of improvement in Plaintiff's symptoms, with Defendant citing records "show[ing] few complaints across the subsequent period." (ECF NO. 26, p. 12, citing A.R. 620, 645-46, 655-56, 665-66, 669, 686-87, 707-08). However, this is a new argument not relied upon by the ALJ, and thus, even if it was ultimately persuasive, this Court may not affirm based on it. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

[4] The context of the medical records indicates that "oxybutylene" and "oxybutynin" are the same thing, and Defendant has not argued otherwise. (A.R. 721).

1  merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a

2  minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686

3  (9th Cir. 2005) (quoting S.S.R. 96-3(p) (1996)).

4      The Ninth Circuit has provided the following guidance regarding whether medically

5  determinable impairments are severe under Step Two:

6      An impairment or combination of impairments may be found "not severe *only*
    *if* the evidence establishes a slight abnormality that has no more than a minimal
7      effect on an individual's ability to work." [*Smolen v. Chater*, 80 F.3d 1273, 1290
    (9th Cir. 1996)] (internal quotation marks omitted) (emphasis added); *see Yuckert*
8      *v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). The Commissioner has stated that
    "[i]f an adjudicator is unable to determine clearly the effect of an impairment or
9      combination of impairments on the individual's ability to do basic work activities,
    the sequential evaluation should not end with the not severe evaluation step."
10     S.S.R. No. 85–28 (1985). Step two, then, is "a de minimis screening device [used]
    to dispose of groundless claims," *Smolen,* 80 F.3d at 1290, and an ALJ may find
11     that a claimant lacks a medically severe impairment or combination of
    impairments only when his conclusion is "clearly established by medical
12     evidence." S.S.R. 85–28. Thus, applying our normal standard of review to the
    requirements of step two, we must determine whether the ALJ had substantial
13     evidence to find that the medical evidence clearly established that Webb did not
    have a medically severe impairment or combination of impairments. *See*
14     *also Yuckert,* 841 F.2d at 306 ("Despite the deference usually accorded to the
    Secretary's application of regulations, numerous appellate courts have imposed a
15     narrow construction upon the severity regulation applied here.")
16
17
18 *Id.* at 686–687. Additionally, the Supreme Court has stated, "The severity regulation increases the

19 efficiency and reliability of the evaluation process by identifying at an early stage those claimants

20 whose medical impairments are so slight that it is unlikely they would be found to be disabled

21 even if their age, education, and experience were taken into account." *Bowen v. Yuckert,* 482 U.S.

22 137, 153 (1987).

23      Regarding Plaintiff's bladder instability, the ALJ provided the following reasoning for

24 concluding that it was not a severe impairment:

25     I find that the claimant's bladder instability is not a "severe" impairment within the
    meaning of the Social Security Act and Regulations because there is no evidence
26     that these conditions have more than a minimal effect on the claimant's ability to
    work (20 CFR 416.921 and Social Security Rulings (SSR) 85-28, 96-3p, and 96-
27     4p). Based on the medical record as a whole there is no evidence of functional
28

6

1    limitations resulting from these conditions, and the claimant has not required any
2    significant treatment for these conditions. As discussed below, when the claimant
     sought treatment for this condition, she experienced improvement.

3    (A.R. 29). Here, the record as a whole contradicts the ALJ's assessment. As noted, Dr. Spalding

4    concluded that Plaintiff would be "off task," twenty-five percent or more during a typical

5    workday and would have to "use [the] bathroom each hour or more frequently." (A.R. 527, 528).

6    And the other available record evidence demonstrates that Plaintiff's urinary issues would have

7    more than a minimal effect on her ability to work, *e.g.*, Dr. Harris noted that Plaintiff urinated

8    about four times per hour and suffered from incontinence. (A.R. 576).[5]

9            Accordingly, the Court concludes that the ALJ's determination that Plaintiff's bladder

10   instability was not a severe impairment at Step Two is not supported by substantial evidence.

11           **C.    Subjective Testimony**

12           Next, Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject

13   her subjective symptom testimony regarding the severity of her bladder instability. (ECF No. 23,

14   p. 13).

15           The Ninth Circuit has provided the following guidance regarding a plaintiff's subjective

16   complaints:

17           Once the claimant produces medical evidence of an underlying impairment, the
             Commissioner may not discredit the claimant's testimony as to subjective
18           symptoms merely because they are unsupported by objective evidence. *Bunnell v.
             Sullivan,* 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v.
19           Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to
             discredit excess pain testimony solely on the ground that it is not fully
20           corroborated by objective medical findings"). Unless there is affirmative evidence
             showing that the claimant is malingering, the Commissioner's reasons for rejecting
21           the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876
             F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ
22           must identify what testimony is not credible and what evidence undermines the
             claimant's complaints.
23
24   *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996).

     _____

25   [5] While Defendant argues that any error on this issue was ultimately harmless because the ALJ accounted
     for the bladder instability in Plaintiff's residual functional capacity (RFC) assessment, the Court need not
26   address this argument, because, as noted below, the combined errors in this case warrant a remand for
     further proceedings. (ECF No. 26, p. 10). However, the Court notes that the RFC accounted for Plaintiff's
27   physical proximity to a toilet—"She must have bathroom access *close* to the work area." (A.R. 31)
     (emphasis added). Thus, it did not account for the *frequency* with which Plaintiff would have to use the
28   toilet.

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."[6] (A.R. 32). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

The ALJ summarized Plaintiff's subjective complaints regarding her bladder instability and the reasons for discounting them as follows:

> The claimant alleges disability due to diabetes mellitus, depression, anxiety, urinary incontinence, and low back pain (Exhibit 16E). The claimant testified to frequent urination, and it takes her longer to do chores. She lies down to relieve her pain. She reported medications work, but she still has to go to the bathroom frequently (testimony). After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because they are not supported by the objective evidence of record.
>
> From October 25, 2016 to October 9, 2017, the claimant was seen at OB/GYN Associates of Turlock with a longstanding history of dysfunctional bleeding and treatment for incontinence. She underwent an endometrial biopsy which revealed endometrium, benign endometrial polyps with secretory endometrium with no evidence of malignancy or atypia. Recommendation was made for transvaginal hysterectomy. Claimant underwent transvaginal hysterectomy on December 5, 2016 (Exhibit 2F, p. 7). She was seen post-op on January 4, 2017 and records indicated that she was asymptomatic and doing well. Claimant presented for a follow-up examination on August 8, 2017. She had undergone a urodynamic study which confirmed the presence of mixed incontinence of urine with significance in bladder capacity. The claimant was started on a trial of anti-spasmodic. If she showed no improvement, then a mid-urethral sling procedure would be considered. On October 7, 2017, the claimant presented for follow-up and showed significant improvement in her bladder instability (Exhibit 23F).
>
> . . . .

---

[6] While the ALJ did not consider Plaintiff's bladder instability to be a "severe" impairment, the ALJ appeared to consider Plaintiff's bladder instability to still be a "medically determinable impairment." (A.R. 31-32).

1

2

3

4

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with evidence of record. . . . Claimant's ability to do light housework, all personal needs, some shopping, easy-meal preparation, and drive, are inconsistent with the alleged presence of a condition that would preclude all work activity.

5

(A.R. 31-32, 36).

6

7

8

First, the ALJ discounted Plaintiff's subjective complaints as unsupported by the medical record. However, for the same reasons discussed above, the ALJ failed to consider the record as a whole in evaluating the limitations posed by Plaintiff's bladder instability.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Next, the ALJ pointed to Plaintiff's ability to carry out some daily tasks as being inconsistent with her symptoms. However, the ALJ failed to explain how Plaintiff's ability to perform simple daily tasks was inconsistent in light of any record evidence. For example, Plaintiff testified she has "[a] lot" of difficulty with urinary accidents and must carry hygienic supplies whenever she goes out because she is unable "to hold it." (A.R. 60-61). Moreover, she has to go to the restroom "too many [times] for [her] to count." (A.R. 60). The fact that Plaintiff can do light housework and drive does not contradict this testimony nor does it mean that she could undertake the tasks necessary for daily employment. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("In addition, activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain. A patient may do these activities despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved.").

23

24

25

Accordingly, the Court concludes that the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

26

**D.    REMEDY**

27

Plaintiff concludes by stating that this case should remanded for payment of benefits, or,

28

alternatively, be remanded for a new hearing. (ECF No. 23, p. 16-17). Defendant characterizes Plaintiff's argument as "cursorily" requesting benefits and argues that, if this Court overturns the ALJ's decision, the proper remedy is a remand for further administrative proceedings. (ECF No. 26, p. 13 n.2).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test, with each of the following parts of the test needing to be satisfied to remand for benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, even if all these parts are met, the Court may still remand when "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021. Notably, remand for further proceedings is the "ordinary" requirement whereas a remand for payment of benefits is the rare exception. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, after review of the record as whole, the Court concludes that a remand for further proceedings is appropriate.

## II.    CONCLUSION AND ORDER

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further administrative proceedings consistent with this decision. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant. IT IS SO ORDERED.

Dated:   **February 17, 2022**                    /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE